E. H. CORRIGAN *v.* UNITED STATES

No. 7879.

Entry Nos. 3009; 3770.

(Decided September 18, 1950)

*Edward P. Sharretts* (*Howard C. Carter* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*Richard H. Welsh, Guy Gilbert Ribaudo,* and *Daniel I. Auster,* special attorneys), for the defendant.

CLINE, Judge: These are appeals for reappraisement of dehydrated garlic powder exported from Mexico on December 2, 1943, and January 6, 1944.

The merchandise was invoiced, entered, and appraised as follows:

| Reap. No. | Merchandise | Invoiced and entered value, per kilo, Mexican pesos | Appraised value, per kilo, Mexican pesos |
|---|---|---|---|
| 160603–A | 35 tins A. P__ | 2. 42 | 5. 00 |
| | | | less nondutiable charges 0.05979%. |
| | 465 tins A. C__ | 2. 75 | 5. 00 |
| | | | less nondutiable charges 0.05979%. |
| 160604–A | 214 tins A. C__ | 2. 75 | 5. 00 |
| | | | less nondutiable charges 0.0668%. |

At the trial, plaintiff called Ernesto Ibarra, food broker, who testified that he had made an investigation to determine whether there

were any markets in Mexico for the sale of dehydrated garlic powder for consumption in Mexico or for exportation to the United States; that there were no such markets in Mexico; that he had sold garlic powder for exportation to the United States to Charles T. Wilson Co., Inc., but not to anyone else; that there was only one manufacturer of garlic powder in Mexico, namely, PAISA [Productos Alimenticios Industrializados, S. A.]; that he had examined the books of that manufacturer; that he did not find any sales of garlic powder other than to Charles T. Wilson Co., Inc.; that he was responsible for the formation of the manufacturing company; that he negotiated the sales covered by these reappraisements to Charles T. Wilson Co., Inc.; that he did not sell such merchandise to anyone else either for exportation to the United States or for consumption in Mexico; that the entire output of the factory was sold to Charles T. Wilson Co., Inc.

Lloyd M. Trafford, vice president of Charles T. Wilson Co., Inc., called as a witness by the plaintiff, testified that he was familiar with the purchase and sale of garlic powder in the United States; that New York and the Pacific Coast were the principal markets for the sale of imported garlic powder in the United States; that he sold dehydrated garlic powder imported from Mexico into the United States; that he made 15 to 20 sales; that the quantity involved in the greatest number of sales was 5 tons; that sales ranged from one-half ton to 5 tons; that prior to the date of the first importation involved herein, he was offering dehydrated garlic powder for sale; that trial lots had been brought in prior to these importations, some through Laredo and some through New York; that approximately 20 tins of 33 pounds each were brought in; that the greater part of this was sold, but some of it was given away as samples.

The witness testified that the merchandise covered by reappraisement No. 160603–A was sold prior to importation to McCormick & Co. on October 5 and 19, 1943, and to H. C. Brill & Co. on September 24, 1943, at 55 cents a pound; that there were no restrictions on his offers to sell; that the price of 55 cents a pound was the maximum price set by the Office of Price Administration; that the following expenses were incurred in connection with this shipment:

| | |
|---|---:|
| Transportation | $596. 13 |
| Customs entry and forwarding | 60. 00 |
| Weighing, sampling, and recoopering | 12. 50 |
| Telegraphic charges | 11. 45 |
| Brokerage | 454. 70 |

The witness stated that the profit on this shipment amounted to $2,267.71, or more than 8 per centum; that overhead and general expenses ran between 15 and 18 per centum; that they were never less than 15 per centum.

Mr. Trafford testified that he sold the merchandise covered by re-

appraisement 160604–A to various purchasers on December 3, 1943, January 27, February 5, and April 20, 1944, at 55 cents per pound; that the following expenses were incurred:

| | |
|---|---:|
| Shipping | $260. 36 |
| Customs entry | 24. 50 |
| Weighing, sampling, and recoopering | 22. 50 |
| Storage and labor charges | 26. 75 |
| Brokerage | 194. 15 |

The witness stated that the profit on this transaction was $929.73, being more than 8 per centum of the cost price; that the general expenses were the same as in connection with the previous entry.

On cross-examination, Mr. Trafford stated that his firm had contracted with the manufacturing company to buy its entire output; that the contract price for the merchandise covered by entry 3009 [reappraisement No. 160603–A] was 2.75 per kilo (Mexican currency) for the A. C. grade and 2.42 for the A. P. grade; that the price for the merchandise covered by entry 3770 [reappraisement No. 160604–A] was 2.75 (Mexican currency) per kilo; that after the merchandise was purchased, his firm agreed to give the manufacturer a bonus over and above a certain basis.

Defendant introduced into evidence two reports of Treasury Representative Francis X. DiLucia, dated January 21 and April 30, 1945, respectively (defendant's exhibits 1 and 2). They relate to a visit made to the offices of PAISA and statements made by Jose Palma, technician and secretary, concerning the bonus or profit-sharing arrangements between PAISA and Charles T. Wilson Co., Inc. Several of the statements in these reports were contradicted by plaintiff's witnesses, Ernesto Ibarra and Lloyd M. Trafford. There were also received in evidence a copy of an unsigned letter from Examiner J. W. Molay relating to an interview with Mr. Trafford (defendant's exhibit 3), an order from Charles T. Wilson Co., Inc., to PAISA for 16,500 pounds of garlic powder at 24 cents per pound, dated October 2, 1943 (plaintiff's exhibit 4), an order from Charles T. Wilson Co., Inc., to PAISA for 1,103 pounds of garlic powder A. P. at 22 cents per pound and 15,433 pounds of garlic powder A. C. at 25 cents per pound, dated October 18, 1943 (plaintiff's exhibit 5), and copies of correspondence with the Bureau of Customs advising the Bureau of the profit-sharing arrangements between Charles T. Wilson Co., Inc., and PAISA (plaintiff's collective exhibits 6, 7, and 8). The contents of these documents will not be discussed since they relate mainly to the profit-sharing arrangement which is not material to the issue involved herein.

At a subsequent hearing there was received in evidence entry papers in connection with a shipment of one crate of powdered garlic exported from Mexico on July 8, 1943, and entered for consumption on August 10, 1943 (plaintiff's exhibit 9).

Mr. Trafford, recalled as a witness for the plaintiff, stated that this was one of the trial shipments to which he had referred; that there were two grades on that invoice, A. P. and A. C.; that the two grades were the same type garlic as came in on entry 3009; that entry 3770 covered only one grade, A. C.; that both grades were sold at the same price; that expenses were incurred in connection with the importation covered by plaintiff's exhibit 9; that they included a brokerage charge of 5 per centum, a forwarding charge from Laredo to New York of $3.16 as set forth on an invoice received in evidence as plaintiff's exhibit 10, and expenses for customs entry, cartage, and recoopering. The witness stated that merchandise from the shipment covered by plaintiff's exhibit 9 was available for sale and delivery on December 3, 1943, and January 6, 1944; that the price at which merchandise like that in suit was sold in the United States did not depend upon the quantity purchased. There was received in evidence as plaintiff's exhibits 11 and 12 a check drawn by Charles T. Wilson Co., Inc., to Productos Alimenticios Industrializados, S. A., and memoranda which show computation and payment of profits according to the profit-sharing arrangement mentioned above.

It appears from the record that this merchandise was not sold for home consumption in Mexico; that it was made by only one manufacturer; and that at the time of exportation herein the entire output of that manufacturer was sold to one importer, Charles T. Wilson Co., Inc. Therefore, as both parties contend, no foreign or export value can be found for this merchandise.

Plaintiff claims that the merchandise is properly dutiable on the basis of United States value and the Government claims that the record fails to establish the elements necessary to find such United States value.

United States value has been defined in the Tariff Act of 1930, as amended, as follows:

SEC. 402.

\*         \*         \*         \*         \*         \*         \*

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

It has been held that United States value can be established only on the basis of the price at which such or similar merchandise, previously imported, is being freely offered for sale to all purchasers at

the time of exportation of the goods being valued. *United States v. G. W. Sheldon & Co.*, 23 C. C. P. A. 245, T. D. 48108; *United States v. New York Merchandise Co., Inc.*, 31 C. C. P. A. 213, C. A. D. 274; *United States v. Robert Reiner, Inc.*, 35 C. C. P. A. 50, C. A. D. 370. Prior to the exportation of the merchandise being valued, there must be at least one offer of sale of prototype merchandise under conditions which truly reflect the United States value of the merchandise under appraisal. *United States v. Robert Reiner, Inc., supra.*

In the instant case the record shows that the imported merchandise was sold at 55 cents per pound and that certain expenses were incurred and profits realized on those sales. However, under the principle laid down in the above cases, those sales cannot be used as a basis for determining United States value.

Mr. Trafford testified that three or four trial lots involving a total of 660 pounds of this merchandise were imported through Laredo or New York previous to the present importations; that various prices were paid for this merchandise; that the greater part of it was sold but that some of it was given away as samples. Plaintiff's exhibit 9 shows an importation of 69 pounds through the port of New York and Mr. Trafford testified that part of this shipment was available for sale and delivery on December 3, 1943, and January 6, 1944. There is no evidence in the record as to the price at which these trial lots were sold or offered for sale. There is evidence that this type of merchandise was usually sold in quantities of one-half ton to 5 tons and that the amount of 5 tons was the usual wholesale quantity. While the witness stated that the price did not depend upon the quantity sold, a quantity of 69 pounds could not have been a wholesale quantity sold in the ordinary course of trade and may not have been sold at the wholesale price. In the absence of testimony, the court may not infer that the previously imported sample shipments were sold at the same price as the later shipments in bulk or that they were sold at the price at which wholesale quantities were sold in the ordinary course of trade. There is no evidence in the record as to the price at which any previously imported merchandise was sold. Therefore, there is no price upon which a finding of United States value may be based.

The proof of United States value is also defective in that the evidence as to profit and general expenses relates to the merchandise to be valued and not to previously imported merchandise.

Since the plaintiff has not sustained the burden of proving United States value or any other value for this merchandise, the presumption of correctness attaching to the appraiser's valuation is applicable and must be affirmed.

On the record herein, I find as facts:

1. That the merchandise consists of garlic powder of two types,

A. P. and A. C., exported from Mexico on December 2, 1943, and January 6, 1944.

2. That on said dates of exportation no such or similar merchandise was being freely offered for sale for home consumption in Mexico, or for exportation to the United States, in accordance with the provisions of section 402 (c) or (d) of the Tariff Act of 1930.

3. That trial lots of this merchandise were imported prior to the dates of exportation herein; that a lot consisting of 69 pounds was entered for consumption on August 10, 1943; that a portion thereof was available for sale in the United States on December 2, 1943, and January 6, 1944; that there is no evidence as to the price at which such merchandise was sold or offered for sale nor is there any evidence as to the profit or general expenses in connection with the sale thereof.

I find as a matter of law:

1. That there is no foreign value or export value, as defined in section 402 (c) and (d) of the Tariff Act of 1930, for the merchandise involved herein.

2. That the importer has failed to establish the necessary elements upon which United States value, as that value is defined in section 402 (e) of the Tariff Act of 1930, as amended, may be found.

3. That the importer has failed to overcome the presumption of correctness attaching to the appraiser's valuation or to establish any other dutiable value.

The appraised values are affirmed and judgment will be rendered accordingly.