E. H. CORRIGAN *v.* UNITED STATES (No. 4712)[1]

[1] C. A. D. 514.

United States Court of Customs and Patent Appeals, January 14, 1953

*Sharretts, Hillis & Paley* (*Howard C. Carter* and *Joseph F. Donohue* of counsel) for appellant.

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster*, special attorney, of counsel), for the United States.

[Oral argument December 11, 1952, by Mr. Carter and Mr. Auster]

Before GARRETT, Chief Judge, and O'CONNELL, WORLEY, and JACKSON (retired), Associate Judges

GARRETT, Chief Judge, delivered the opinion of the court:

Appellant here seeks review and reversal of the decision of the First Division of the United States Customs Court (Reap. Dec. 8046, 27 Cust. Ct. 436), affirming that of a single judge of that court, sitting in reappraisement (Reap. Dec. 7879, 25 Cust. Ct. 424), who held that the importer had failed to overcome the presumption of correctness

which attached to the appraisement by the local appraiser and upheld the values found by him as the dutiable value. The actual party in interest is Charles T. Wilson Company, Inc., Corrigan, the nominal appellant, being the broker who handled the entry.

The merchandise, which was entered at the port of Laredo, Texas, consists of dehydrated garlic powder imported in two shipments.

The first shipment was exported from Mexico overland on December 2, 1943, and entered at Laredo for consumption on December 3, 1943. The consular invoice bears date of November 18, 1943. It seems there were two types of the garlic, the types being distinguishable by the quality of their colors. One type was identified by the notation "A. P." and the other by the notation "A. C." In the first shipment, which was covered by entry No. 3009, reappraisement 160603–A, there were 35 tins of the A. P. type and 465 tins of the A. C. type. The weight of the A. P. type was 525 "kilos," the equivalent of 1155 United States pounds. The weight of the A. C. type was 6975 "kilos," the equivalent of 15,345 United States pounds. The A. P. type was invoiced and entered at a valuation of 2.42 Mexican pesos per kilo and the A. C. type at 2.75 Mexican pesos per kilo, both less non-dutiable charges not itemized. The local appraiser advanced the valuation of both types to 5.00 Mexican pesos per kilo, less non-dutiable charges of 0.05979%.

The second shipment, covered by entry No. 3770, reappraisement 160604–A, was exported overland from Mexico on January 6, 1944, and entered at Laredo on that same day. The consular invoice bears date of December 28, 1943. It consisted of 214 tins, all of the A. C. type, the weight being 3210 "kilos," the equivalent of 7062 United States pounds. It was invoiced and entered at a valuation of 2.75 Mexican pesos per kilo, less non-dutiable charges not specified. The local appraiser advanced the valuation to 5.00 Mexican pesos per kilo, less non-dutiable charges of .0668%.

It is noted that the weights in both shipments equal 33 United States pounds per tin, and that the local appraiser made no distinction in value between the two types. It appears from the record that there was no difference in the price received for the respective types when sold by the importer in the United States.

It may be stated at this juncture that it was definitely established, as held by both the single judge sitting in reappraisement, and the appellate division, that there was neither a foreign value nor an export value of the merchandise, as defined respectively, in sections 402 (c) and 402 (d) of the Tariff Act of 1930,[1] and counsel for the respective parties agree that such finding was correct.

---

[1] The exporter of the merchandise was the manufacturer and the only manufacturer of dehydrated garlic powder in Mexico. It was a newly established business there, and the Wilson Company seems to have taken all that the manufacturer had produced up to the time of the exportation and entry of January 6, 1944, and to have contracted to purchase all the output produced thereafter.

Such being the case, it was necessary to resort to United States value as defined in section 402 (e) of the act in the first instance, and, if no United States value could be found, it was required that cost of production, as defined in section 402 (f) should be invoked.

The appraiser at Laredo did not note upon the official papers the statutory basis which he applied in his finding of value, nor is it otherwise disclosed in the record. So, the courts are left in the dark as to the statutory provision on which his valuation was based. From our experience in this field of controversy, we may say that we often would find it helpful to know what basis the appraiser adopts, and we know of no sound reason for keeping it secret, but, we recognize the fact that there is no mandatory requirement that his reasons be made public. The actions of appraisers in this regard, doubtless, are usually dictated, when difficulties arise, by higher officials of the Customs Bureau,[2] but, technically, and for the purposes of procedure, the appraisal always is treated as the act of the appraiser whose official status is defined in section 401 (j) of the Tariff Act of 1930, and whose duties are prescribed in sections 499, 500, 503, 504, and 509, of the Act.

Whatever the procedure of the local appraiser in the instant case may have been, it is agreed that the importer had the burden of proving a value independently of the appraiser's action and, as stated by the appellate division in substance, if the record is insufficient to support either United States value or cost of production, the normal procedure is to affirm the appraiser's action.

In the effort to meet its burden in the case the importer attempted to prove, and claims that it has proven, a United States value as that value is defined in section 402 (e) of the Tariff Act of 1930, which section reads:

(e) UNITED STATES VALUE.—The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale for domestic consumption, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

---

[2] In the course of its decision the appellate division said:

Simply because the Government has seen fit to accept and follow a policy of secrecy as to the basis of the value found and adopted by an appraiser, without attendant notation by him on the official papers, does not mean that such tactics should go on forever. Value, as defined in the tariff act, is the very essence of the issue in litigation of this character. It is incumbent upon a plaintiff in an action like this to assert and prove a value different from that found by the appraiser, and yet the Government contends that the basis for the latter cannot be divulged if not noted on the official papers because to do so would violate some supposedly between-the-lines intendment in the statute. It is inconceivable that such an essential should not and cannot be obtained. A pretrial conference would readily result in such a disclosure, and that seems to us as not the only method.

Applying the statute to the specific state of facts existing in the instant case, it will be observed that it was incumbent upon the importer to show the price at which *on or about December 2, 1943, and on or about January 6, 1944,* such or similar imported dehydrated garlic powder packed ready for delivery was being offered for sale to all purchasers in the principal market of the United States for consumption in the United States, the offers being in the usual wholesale quantities and in the ordinary course of trade, certain deductions from such prices, defined in the section, being allowable as non-dutiable charges. The dates stated, December 2, 1943 and January 6, 1944, were the dates upon which the merchandise was exported from Mexico into the United States and it should be understood that the phrase "at the time of exportation," used in the statute, as was declared by this court in the case of *United States* v. *New York Merchandise Co., Inc.,* 31 C. C. P. A. (Customs) 213, C. A. D. 274, "does not necessarily mean the hour or the day of exportation, but [means] a time near enough to the date of exportation and under such circumstances as will reflect the price of the goods on the date of exportation."

Appellant contended before the tribunals of the Customs Court and contends before us that sales and offers of sales were shown to have been made prior to the respective entries, on the date stated, for future delivery, and it is urged that "where merchandise is sold by sample prior to importation, its sale price is competent evidence of United States value."

It may be said just here that the appellate division of the Customs Court virtually adopted the findings of fact made by the single judge and did not elaborate further except "to refer to various phases of the record in the course of reasoning upon which conclusions are based."

As we understand the decision of the single judge, the contention that offers of sales and actual sales of the importations entered on December 3rd and January 6th had been made *in advance* of such importation, was upheld, but such advance sales, for reasons hereinafter recited, were not regarded by either the single judge or the appellate division as constituting a proper basis for determination of United States value.

The witness with respect to such sales was Mr. Lloyd M. Trafford who, at the time of testifying, was Vice-president of the appellant company. The brief on behalf of appellant summarizes his testimony on this point as follows (references to pages of the record etc. being deleted):

It has been established by bo. the testimony of appellant's witness Trafford and the documentary evidence t at most of the imported merchandise was not only offered for sale but was actually sold several months prior to importation. The details of these sales are as follows:

| Purchaser | Date of Sale | Quantity Purchased | Price paid |
|---|---|---|---|
| | *Entry 3009* | | |
| | *Entered December 2, 1943* | | |
| H. C. Brill_____ | 9–24–43 | 16 tins | 55¢ per lb. duty paid |
| McCormick_____ | 10– 5–43 | 356 tins | " |
| McCormick____ _____ | 10–19–43 | 128 tins | " |
| | *Entry 3770* | | |
| | *Entered January 6, 1944* | | |
| Stickney & Poor___ ____ _____ | 12– 3–43 | 30 tins | " |
| H. C. Brill_____ | 1–27–44 | 16 tins | " |
| M. Bussler_____ | 2– 5–44 | 4 tins | " |
| Jacobus Frank_____ | 4–20–44 | 162 tins | " |

It is noted that advance sales of the tins included in the lot exported from Mexico on December 2nd and entered at Laredo December 3rd, were made on dates ranging from September 24, 1943 to October 19, 1943, and that sales of the tins included in the lot exported and entered on January 6, 1944, were made on dates ranging from December 3, 1943 (which, it will be observed, was the entry date for the first importation) to April 20, 1944, and that the prices charged in all instances was the same—55 cents per pound, duty paid. This was the maximum price set by the United States Office of Price Administration under legal authority.

It was the view of the single judge, upon the basis of court decisions cited, that "United States value can be established *only* on the basis of the price at which such or similar merchandise, previously imported, is being freely offered for sale to all purchasers *at the time of the exportation* of the goods being valued." [Italics ours]

The appellate division agreed with that holding and analyzed the several decisions relied upon quoting therefrom excerpts which it deemed pertinent. The decisions so cited were those made by this court in the cases of *United States* v. *G. W. Sheldon & Co.*, 23 C. C. P. A. (Customs) 245, T. D. 48108; *United States* v. *Collin & Gissel* (*Ludwig Baer*), 29 C. C. P. A. (Customs) 96, C. A. D. 176; *United States* v. *New York Merchandise Co., Inc.*, 31 C. C. P. A. (Customs) 213, C. A. D. 274; and *United States* v. *Robert Reiner, Inc.*, 35 C. C. P. A. (Customs) 50, C. A. D. 370.

The merchandise involved in the *Sheldon & Co.* case, *supra*, was described as alcoholic perfumery; that in the *Collin & Gissel* case, *supra*, as a machine for washing beer barrels; that in the *New York Merchandise Co.* case *supra*, as tungsten torch lamps; and that in the *Reiner, Inc.* case, *supra*, as hosiery machines.

The point in those decisions, particularly stressed, relates to the holding of this court as stated, for example, in our decision in the *New York Merchandise Co.* case, *supra*, where we expressed the view that it was definitely settled that in cases involving the application

of United States value, "the value of the imported merchandise to be arrived at must be based upon the price at which such or similar *previously imported* merchandise is freely offered for sale to all purchasers, packed ready for delivery, etc., *at the time of exportation of the imported merchandise.*" [Italics ours]

The quoted holding was a substantial repetition of what we had held in the *Sheldon & Co.* and *Collin & Gissell* cases, *supra*, and it was substantially repeated in the *Reiner* case, *supra*, where we also stated that it had been the consistent attitude of this court "to liberally construe the language of said United States value provision so as to bring about the obvious purpose of Congress and so as to make the provision workable in reflecting a fair value for appraisement."

The appellate division quoted the following from our decision in the *Collin & Gissell* case, *supra*, the italics being supplied by that court:

* * * Clearly, had the importation here involved been a first importation of the particular type of merchandise at issue no United States value could be determined under the statutory definition which Congress adopted and, *there being no prototype machine in the United States* at or near the date of exportation of the involved machine available for offer, a fundamental element of United States value, as defined by the statute, was lacking. Upon the facts shown, in our opinion, no legal distinction can be drawn between the importation involved and a case of first importation.

It is urged, in effect, by counsel for appellant before us that the instant case is distinguishable from those cases because the merchandise present in the instant importations had in fact been offered for sale and sold by samples prior to the time of the exportations from Mexico for delivery after importation, and that this meets the statutory requirement as to United States value.

A further claim, to the effect that at the time of the exportations involved here there was in fact dehydrated garlic powder in the United States which was being freely offered for sale, etc., is hereinafter discussed. We think the matter of the effect of sales for future delivery should be given attention first, particularly in view of the holding hereinafter made concerning the latter claim.

Alluding to the cases cited and reviewed by the appellate division, the brief for appellant declares:

In none of the above cases has this court held that sales of imported merchandise on the basis of sample may not be considered in determining United States value because the goods were not physically in the country at the time the sale was made.

It is one thing to say, as this court has in the cases cited above, that statutory United States value may be determined by sales or offers of sales of previously imported merchandise made at or prior to the time of exportation of the merchandise under consideration. Such ruling is entirely harmonious with Section 402 (e). It is quite another proposition to insist, as the lower court has here that when the merchandise under consideration was actually sold in the United States prior to its delivery and at or about the time of exportation, such sales cannot form a basis for statutory United States value. Such holding is repugnant to the letter and purpose of the statute and finds no support in the cases cited by the lower court.

The statute itself does not *ex vi termini*, exclude as irrelevant sales or offers of sale of the identical merchandise as a basis for United States value. Of course, it permits a consideration of only those sales of "such merchandise" that are made at the time of exportation, and thereby excludes sales, whether of such, similar or identical merchandise when made *subsequent* to importation. But this is a matter of *time*. It is not related to the identity of the merchandise. [Italics ours.]

The expression "such or similar merchandise" as a standard of comparison in determining market value has been held to include the merchandise under consideration. In *United States* v. *Johnson Company* (1919), 9 Ct. Cust. Appls. 258, T. D. 38215, the court, in interpreting paragraphs L and R of the Tariff Act of 1913, directing its attention particularly to the expression "such or similar merchandise" stated:

> "Each is a definition of wholesale market value, the one foreign and the other domestic. Each authorizes that in arriving thereat appraising officers may not only take into consideration sales of the very merchandise imported but sales of similar merchandise."

It is true that this court had no occasion to consider the effect of offers of sales and sales in any one of the cases cited and discussed by the appellate division.

In a subsequent part of the brief for appellant, however, there is a somewhat extensive discussion of the case of *The Stern Hat Co.* v. *United States*, 26 C. C. P. A. (Customs) 410, C. A. D. 48, which was cited in our decision in the *Collin & Gissell* case, *supra*, but was not independently cited nor discussed in the decision of the appellate division in the instant case. The merchandise there involved was described as men's fur felt hats imported from Italy.

Appellant's brief states that it is the only case "dealing with the probative value of evidence of sales of imported merchandise for future delivery with respect to fixing the United States value of such merchandise" disclosed by an "extensive search," and summarizes the facts as follows:

\* \* \* In that case several importations of men's fur felt hats were appraised on the basis of their United States value and claimed by the importer to be properly subject to appraisement at their statutory cost of production. The importer moved in evidence the record of an earlier reappraisement case of admittedly similar merchandise wherein the Customs Court had held that there was no foreign, export or United States value for the merchandise and that it was dutiable on the basis of its cost of production. The Government offered a tabulation showing sales of allegedly similar merchandise for future delivery to purchasers in the United States. This court, speaking through Judge Lenroot, held that the sale price of the merchandise could not be relied on to establish the United States value because it was not imported at the time the sale was made.

It is then stated that the only authority citied by this court in support of its conclusion was the decision in the *Sheldon* case, *supra*, which "does not deal at all with sales for future delivery," and the brief continues:

It is urged here most respectfully but most earnestly that the principle of decision in the *Stern Hat Company* case, *supra*, should be reexamined because it appears

to be contrary to the letter and purpose of section 402 (e) and because it is not harmonious with this court's decision in *White Lamb Finlay, Inc.* v. *United States* (1942) 29 C. C. P. A. (Customs) 199, C. A. D. 192.

It is noted that the majority opinion in the case of *White Lamb Finlay, Inc.* v. *United States*, 29 C. C. P. A. (Customs) 199, C. A. D. 192, so cited by appellant, like that in the *Stern Hat Co.* case, *supra*, was written by the late Judge Irvine L. Lenroot, and that it was rendered January 5, 1942, during the October 1941 term of the court, while the decision in the *Stern Hat Co.* case *supra*, was rendered March 6, 1939, and the *Collin & Gissell* case, *supra*, in which the *Stern Hat Co.* case was cited and reviewed in part, was rendered June 9, 1941, near the close of the 1940 term. It should be borne in mind that no question was raised respecting the effect of prices in offers of sales or in sales for future delivery upon determination of United States value in the *Collin & Gissell* case, *supra*.

The merchandise in the *White Lamb Finlay, Inc.*, case, *supra*, was described as "woven wax paddings." It came from Belgium where it was manufactured solely for exportation to the United States. It was not offered for sale or sold in Belgium. Hence, there was no foreign value. It was offered for sale and sold on different dates to be delivered in the United States on some future dates. The importer purchased a lot June 21, 1939, to be delivered in September, October and November, 1939. The contract price was 4.15 Belgian francs per meter, packed, less 3%. The shipment there involved was a part of the lot which was exported from Belgium October 25, 1939. Upon arrival in the United States it was entered for duty at a valuation based upon the June 21, 1939, purchase price. In the meantime, the importer had, on or about September 20, 1939, placed an order for such or similar merchandise to be delivered during January, February and March, 1940, at a price of 6 Belgian francs per meter, packed, less 3 per cent, and the local appraiser advanced the value of the shipment contracted for on June 21st, but not exported from Belgium until October 25th, to the price at which the order of September 20th was made—that is, 6 Belgian francs per meter, packed, less 3 percent.

The importer appealed to reappraisement and the action of the local appraiser was sustained by all the courts.[3]

In its decision in the instant case the appellate division discussed the *White Lamb Finlay, Inc.* decision as follows:

\* \* \* That case concerned *export value* of woven flax paddings, a particular class of merchandise never carried in stock but always sold or offered for sale on the basis of future deliveries. Undisputed facts showed that the importer had entered into a contract with the foreign manufacturer in June, for deliveries in September, October, and November, at a price of 4.15 Belgian francs per meter,

---

[3] The action of the local appraiser was supported by all the judges of the Court of Customs and Patent Appeals, but there were sharp differences of opinion as to some of the reasons given by the majority for its conclusions.

less 3 per centum. Later, and in September, the price advanced to 6 Belgian francs per meter, less 3 per centum, and the importer entered into a second contract at the higher price. On a shipment made in October under the first contract, but during tenure of the second, importer sought appraisement of the merchandise at a lower price existing under the earlier contract. The court, confined to stipulated facts, held (in lengthy opinions devoted largely to a discussion concerning the validity of a Treasury ruling) that "there is nothing in said stipulation overcoming the presumption of the correctness of the appraisement by the local appraiser." Appellant contends that the said case embodies a statutory construction to be applied to United States value. It should be again emphasized that export value, section 402 (d) of the Tariff Act of 1930, was in issue, and although United States value has been held to represent a constructive foreign or export value, *New York Merchandise Co., Inc.*, case, *supra*, nevertheless, a so-called constructive export value is not statutory export value. United States value relates to prototype merchandise available for sale in this country at the time of exportation of the merchandise being valued, while export value, as defined in the statute, is the price, at the time of exportation, at which "such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, * * *." Nothing appears in the *White Lamb Finlay, Inc.*, case, *supra*, which even remotely tends to disturb the well-recognized principles for finding United States value as set forth in the controlling cases briefly outlined and which will be followed herein. * * *. [Italics quoted]

We do not agree with the contention of counsel for appellant that the decision in the *Stern Hat Company* case, *supra*, is out of harmony with this court's later decision in the *White Lamb Finlay Inc.* case, *supra*. The statutory provisions respecting export value as defined in section 402 (d) and United States value as defined in section 402 (e) are different. In the former value is based on the price charged in the country from which the merchandise is exported; in the latter it is based on the price in the United States.

However, the *White Lamb Finlay Inc.* case, *supra*, does recognize the prices in offers of sales and sales for future delivery as constituting a basis for determining dutiable export value, and the decision in the *Stern Hat Co.* case, *supra*, apparently denied such recognition.

In the course of this court's decision in the *Stern Hat Co.* case, *supra*, it was said:

* * * We assume that the appellate division and the trial court regarded sales of similar merchandise *for future delivery*, made on or about the time of the exportation of merchandise here involved, as a proper basis of arriving at United States value of the involved merchandise. This is the Government's theory. However, the statute, section 402 (e) of the Tariff Act of 1930, requires the prototype merchandise to be imported merchandise. [Italics new here]

The decision then stated, in substance, that none of the sales relied upon by the Government were of imported merchandise, and said that a sale of fur hats made on July 7th, 1931, but not imported until September 23, 1931, was the only sale of merchandise imported previous to the exportation of the merchandise involved in the case

before it, and that it was the only case that could be resorted to as a basis for arriving at the United States value of such merchandise.

This was followed by citation of and quotation from the case of *Sheldon & Co., supra*, which, as has been indicated, was the only authority cited.

That is substantially all that was said in the text of the opinion upon the question of sales or offers of sales for future delivery. The headnote upon that subject is perhaps clearer than the opinion itself. The briefs in the case have been examined, particularly that on behalf of the Government, and we find practically nothing relevant to the matter in them.

We have given further thought to the matter in view of the arguments presented in this case and we feel impelled to a different view from that there expressed.

Before proceeding further with respect to the two importations here involved, it is proper to consider another claim of appellant, hereinbefore alluded to, which was stated and discussed in the decision of the appellate division as follows:

Seeking to show that prototype merchandise was freely offered for sale and sold in this country at the time of exportation of the garlic powder in question, appellant refers to "three or four" trial shipments, aggregating 660 pounds, received prior to the importations under consideration. The greater part of those trial lots was sold, but some was given away as samples. Although the vice president of the importing corporation testified that various prices were paid for the trial shipments and all were sold at the same price, the record contains no proof of sales prices or offers for sale concerning the trial shipments. 1 Counsel for appellant stress an importation of 69 pounds, that included both grades of the garlic powder in question (exhibit 9) entered through the port of New York and which was available for sale and delivery prior to the shipments in question. In the light of proof, as the evidence discloses, that dehydrated garlic powder was ordinarily sold in wholesale quantities of one-half to 5 tons, and that 5 tons was a usual wholesale quantity, obviously none of the amounts sold from the trial or sample shipments referred to were in quantities that can be considered in finding value under the statute, section 402 (e), *supra*. The trial judge summarized this line of proof in the following language:

* * * While the witness stated that the price did not depend upon the quantity sold, a quantity of 69 pounds could not have been a wholesale quantity sold in the ordinary course of trade and may not have been sold at the wholesale price. In the absence of testimony, the court may not infer that the previously imported sample shipments were sold at the same price as the later shipments in bulk or that they were sold at the price at which wholesale quantities were sold in the ordinary course of trade. There is no evidence in the record as to the price at which any previously imported merchandise was sold. Therefore, there is no price upon which a finding of United States value may be based.

In our opinion that which is affirmative in the foregoing findings of fact is supported by substantial evidence and no substantial evidence was presented to overcome that which is negative.

This court is without jurisdiction to find facts in reappraisement proceedings, nor do we weigh the evidence beyond the point of determining whether there is any which is substantial, that being a question of law.

Hence, the decision of the respective tribunals of the Customs Court above quoted stands.

Returning now to the importations immediately involved, we feel constrained to hold that offers of sale and sales for future delivery properly may be taken into consideration in determining United States value as defined in section 402 (e), *supra*, in cases where the facts and circumstances show that such procedure is followed in the ordinary course of trade, and the other requisite statutory elements are present.

It will be noted that we say "offers of sales and sales." The decision of the appellate division has an expression indicating that, in its opinion, sales have no bearing in finding statutory United States value, and we do not agree with that. In ordinary commercial transactions, we think sales almost always imply that offers of sale have preceded the actual sales.

This brings us to the statement of a conclusion relative to the status of entry No. 3770, Reappraisement 160604–A (the second importation) which has not been presented during consideration of the controversy, so far as the record shows.

Both of the exportations have been treated as being in the same legal category. It seems to us that the second exportation—that occurring on January 6th, 1944—is entitled to be considered in the light of the offers of sales and sales made of the merchandise contained in the first exportation made on December 2, 1943. The time between them was brief and there is nothing in the record to indicate a probability of any price differences between the two dates.

With reference to the first case, entry No. 3009, Reappraisement 160603–A, the tribunals of the Customs Court did not evaluate the evidence. This, of course, was due to their belief that, as a matter of law, the offers of sales and sales could not be considered in fixing United States value. Their belief in that respect was justified by the decisions of this court, particularly that in the *Stern Hat Co.* case, *supra*, but, as as been indicated, we have reached the conclusion that a view different from that there stated as to offers of sales and sales for future delivery should be adopted, and it is proper that the Customs Court, under its exclusive jurisdiction in the matter of fact finding, should evaluate such evidence, and a remand of the case for that purpose is proper.

The judgment of the appellate division of the Customs Court is *reversed* and the case is *remanded* to the end that the judgment sustaining the entered value in entry No. 3770, Reappraisement No.

160604–A may be entered, and to the further end that the evidence in entry No. 3009, Reappraisement 160603–A may be restudied and acted upon in conformity with the holding as to the law herein made.

JACKSON, J., retired, recalled to participate herein in place of COLE, J.

---

ON PETITION FOR REHEARING

March 11, 1953.

GARRETT, Chief Judge.

The foregoing decision was agreed upon January 14, 1953. In conformity with our practice copies were distributed to the parties in interest but the decision was withheld from publication pending expiration of the time within which reconsideration or rehearing or other relief might be sought.

On January 30, 1953, a "Petition for rehearing" was filed on behalf of the Government and on February 5th a memorandum in opposition to the petition was filed on behalf of appellant. The memorandum denied the necessity for a rehearing but indicated "some clarification" might be helpful.

The petition has received our careful study with the result that we are not convinced that a rehearing is necessary, or desirable, but it is recognized that the final statement in our decision respecting the second importation made on January 6, 1944 (Entry 3770, Reappraisement 160604–A) requires a correction in phraseology to express properly the views of this court as to the law here applicable and set forth the actual intent of this court's judgment.

Such correction is, of course, within the authority of the court at this stage of the proceedings.

As to the first importation, made December 2, 1943—Entry No. 3009, Reappraisement 160603–A, we held, in effect, that sales and offers of sales made prior to the importation properly should have been taken into consideration in determining United States value as defined in section 402 (e) of the Tariff Act of 1930; and as to the second importation, entered January 6, 1944, we held, in effect, that sales and offers of sales of the merchandise included in the first importation (that of December 2, 1943) should have been considered in determining such United States value.

Relative to that importation, we pointed out that the evidence had not been evaluated by either of the tribunals of the Customs Court and, recognizing that court's exclusive jurisdiction in the matter of fact finding, we directed that the case be remanded to the end that a restudy might be made and action taken in conformity with our holding as to the law.

With respect to our holding relative to the first importation, Entry 3009, the Government's petition for rehearing states:

\* \* \* in view of the new interpretation of the law, as expressed in said opinion, the reversal and remand in connection with *that* reappraisement case are deemed proper. [Italics quoted.]

So no correction or clarification of the decision in that regard is required or sought.

The situation with respect to the second importation is different.

As to it, the petition first quotes verbatim the following from our decision:

The judgment of the appellate division of the Customs Court is reversed and the case is remanded to the end that *the* judgment sustaining the entered value in entry No. 3770, Reappraisement No. 160,604–A may be entered \* \* \*. (Italics in petition.)

The petition then states:

If it [the so quoted excerpt] is to be read as though the word "the" refers to a judgment theretofore rendered by the Customs Court, then it is in error because no court *previously* entered a judgment sustaining the entered value in connection with said reappraisement case.

If it is to read with the word "a" substituted for the word "the", then it is also in error for the *entered* value in each case is in Mexican currency (Mex. pesos 2.42 and 2.75 per kilo) and represents the invoice price and alleged purchase price *in Mexico* (see page 2 of opinion, as well as page 2 of appellant's and appellee's briefs). It does *not* represent the gross or net selling price *in the United States*.

The purchase price in Mexico, in Mexican currency per kilo, could not conceivably represent the statutory United States value in the United States, for in the United States the importer claims a selling price in United States currency of $.55 per pound, from which it asserts that deductions should be made. Obviously, any sales made in the United States would be in United States currency.

Moreover, appellant's brief, page 21, suggests a net United States value in Entry No. 3009 (Reappraisement No. 160603–A) of $.291 per pound, and, at page 22, a United States value, without asserting any entry number and presumably it refers to Entry No. 3770 (Reappraisement No. 160604–A) of $.2202 per pound, which mathematically should be $.2562 per pound as we note an error in deducting $.1406 from $.3608 instead of deducting $.1046.

Neither of these claimed values is the equivalent of the entered values in either case at the rate of exchange published for the respective dates of exportation in T. D. 50973 and T. D. 50985.

The foregoing criticism is conceded by us to be apropos and we regret that our views and intent were not more accurately phrased.

It should have been made clear that the Customs Court did not evaluate the evidence as to either of the two importations, and, instead of remanding the second to the end that a judgment be entered "sustaining the entered value," it should have been remanded for an evaluation of the evidence by that court just as in the case of the second importation, with entry of judgment in conformity with its findings of fact under the law as stated in our decision.

In considering the petition for rehearing it has occurred to us that it will be proper for the Customs Court, in determining United States value of the second importation, to consider not only sales and offers of sale of the merchandise included in the first importation, but also sales or offers of sales by *properly proven* samples taken from either importation, the Customs Court in all instances to judge the weight of the evidence.

The original judgment will be amended to conform to this supplemental statement.

Other incidental matters mentioned in the petition (such, for example, as an expression concerning a "closed market,") are deemed irrelevant to the case under the assignments of error accompanying the appeal.

It is thought that the correction herein made renders a rehearing or reargument unnecessary and, in so far as such is sought by the petitioner, it is denied.